KEITH D. GROSSMAN (SBN 131335)
kgrossman@hkemploymentlaw.com
HIEU T. WILLIAMS (SBN 280585)
hwilliams@hkemploymentlaw.com
MICHELLE C. FREEMAN (SBN 318908)
mfreeman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
456 Montgomery Street
Suite 2200
San Francisco, CA  94104
Telephone:  (415) 835-9000
Facsimile:   (415) 834-0443

Attorneys for Petitioner,
HYATT HOTELS CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYATT HOTELS CORPORATION,<br><br>              Petitioner,<br><br>vs.<br><br>UNITE HERE LOCAL 11,<br><br>              Respondent. | Case No. 2:22-cv-5858<br><br>**PETITIONER HYATT HOTELS CORPORATION'S MOTION TO VACATE ARBITRATION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Concurrently filed with: (1) Declaration of Michelle C. Freeman; and (2) [Proposed] Order)<br><br>Hearing Date:  TBD<br>Hearing Time:  TBD<br>Hearing Dept.:  TBD |

**TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE THAT** as soon as this matter may be heard by the United States District Court for the Central District of California, Petitioner HYATT HOTELS CORPORATION ("Petitioner" or "Hyatt") will and hereby does move this Court pursuant to Section 301 of the Labor Management Relations Act

HIRSCHFELD KRAEMER LLP

("LMRA"), 29 U.S.C. §185, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§9-11, for an order vacating the contractual arbitration award issued by Arbitrator JC Gonzalez, Esq. (the "Arbitrator") in the matter of *Unite Here Local 11 v. Hyatt Hotels Corporation,* on May 20, 2022 (the "Award").

Hyatt's Motion to Vacate Arbitration Award (the "Motion") is made on the following grounds:

(1)     The Arbitrator acted in manifest disregard of the applicable law and relevant facts by ordering specific performance by a third party;

(2)     The Arbitrator acted in manifest disregard of law by awarding specific performance in circumstances in which it is impossible for Hyatt to comply;

(3)     The Arbitrator acted in manifest disregard of law by ignoring basic contract law in ruling that Hyatt committed a breach of the Memorandum of Agreement ("MOA");

(4)     The Arbitrator exceeded his authority by defining the rights of a third party, Relevant Group ("Relevant"), who was not a party to the contract in dispute nor present at the arbitration hearing; and

(5)     The Award violates well-established public policy.

In accordance with Central District Local Rule 7-3, Hyatt's counsel conferred with counsel for UNITE HERE, Local 11 (the "Union") on August 10, 2022, and discussed the substance and potential resolution of the motion, but the parties were unable to come to any agreement to avoid seeking resolution from the Court. (*See* Declaration of Michelle C. Freeman, ¶¶11-12.)

Hyatt's Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in support of the Motion filed herewith, the Declaration of Michelle C. Freeman, and exhibits thereto filed herewith, all documents and records on file in this action, any further evidence or arguments that may be presented at or

/ / /

/ / /

1  before the hearing on this matter and any and all matters upon which the Court

2  may take judicial notice.

3

4  Dated:  August 18, 2022                    HIRSCHFELD KRAEMER LLP

5

6                                        By: /s/ Michelle C. Freeman

7                                            Keith D. Grossman
                                             Hieu T. Williams
8                                            Michelle C. Freeman
                                         Attorneys for Petitioner,
9                                        HYATT HOTELS CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIRSCHFELD KRAEMER LLP

HIRSCHFELD KRAEMER LLP

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   JURISDICTION AND VENUE ...........................................................2

III.  STANDARD OF REVIEW ..................................................................3

IV.   FACTUAL BACKGROUND ................................................................4

    A.   Hyatt Assumes Hotel Management Agreements For Hotels Owned by Relevant. ..........................................................................4

    B.   Hyatt and the Union Enter into a Memorandum of Agreement Regarding Card Check Neutrality at Hotels That Hyatt Comes to Own or Manage, and Relevant Objects. ................................5

    C.   Hyatt And Relevant Terminate the HMAs and Enter into Franchise Agreements, and Relevant Declines to Assume Hyatt's Obligations Under the MOA. ...........................................6

    D.   The Arbitration over the MOA and Final Award. ...................8

V.    LEGAL ARGUMENT ........................................................................9

    A.   The Arbitrator Acted In Manifest Disregard of Well-Established Contract Law, Including A Specifically Codified Statute, Prohibiting Specific Performance By Third Parties. ....................9

        1.   The Arbitrator's Attempt To Distinguish Controlling Law By Cherry-picking, Ignoring, And Misconstruing Facts Was A Manifest Disregard Of The Law. ..................................11

        2.   The Arbitrator's Conclusion That Relevant Was Not A Valid Non-Party To The MOA Is Irreconcilable With The Undisputed Facts. ...........................................................16

        3.   The Arbitrator's Holding that Hyatt Breached the MOA Based On His Conclusion That The Termination Agreements Did Not Terminate The HMAs, And Instead, Execution Of The Termination Agreements and Franchise Agreements Resulted In A "Reorganization", Was In Manifest Disregard Of Basic Contract Law Principles. ................................................18

    B.   The Arbitrator Acted In Manifest Disregard Of Law By Awarding Specific Performance That Is Impossible For Hyatt To Comply With.19

    C.   The Award Should Also Be Vacated Under The FAA And the LMRA Because The Arbitrator Exceeded His Authority by Defining the Rights and Obligations of Relevant, A Non-Party to the Arbitration. ............21

    D.   The Award Should Also Be Vacated Under Either The FAA or Section 301 Because The Award Violates Public Policy. ................................23

VI.   CONCLUSION ...............................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amedeo Hotels L.P. v. New York Hotel & Motel Trades Council*,
  2011 U.S. Dist. LEXIS 55032 (S.D.N.Y. May 17, 2011)...................................22

*Aramark Facility Servs. v. SEIU, Local 1877*,
  530 F.3d 817 (9th Cir. 2008) ........................................................................4, 24

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*,
  913 F.3d 1162 (9th Cir. 2019) ...........................................................................23

*Axelrod v. Osage Oil & Refining Co.*,
  29 F.2d 712 (8th Cir. 1928) ...........................................................................9, 13

*Comedy Club, Inc. v. Improv West Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) .....................................................................*passim*

*Coutee v. Barington Capital Grp.*,
  L.P., 336 F.3d 1128 (9th Cir. 2003) ..............................................................16, 18

*DeMartini v. Johns*,
  693 F. App'x 534 (9th Cir. 2017)..........................................................................4

*Dist. Council 1707 v. Ass'n of Black Soc. Workers Day Care*,
  2010 U.S. Dist. LEXIS 26650 (S.D.N.Y. Mar. 22, 2010) .................................22

*E. Assoc. Coal Corp. v. Mine Workers*,
  531 U.S. 57 (2000) ...............................................................................................4

*Elier Mfg., Inc. v. Kowin Dev. Corp.*,
  14 F.3d 1250 (7th Cir. 1994) ..............................................................................21

*Ellis v. Treat (C.C.A.)*,
  236 F. 120 (9th Cir. 1916) .......................................................................9, 10, 13

*Golden v. O'Melveny & Myers LLP*,
  No. 2:14-cv-08725-CAS(AGRx), 2019 U.S. Dist. LEXIS 191158 (C.D. Cal.
  Nov. 1, 2019) .....................................................................................................24

HIRSCHFELD KRAEMER LLP

ii

*Herrling v. Citibank N.A.*,
　No. CV 20-6989 FMO, 2021 U.S. Dist. LEXIS 40125 (C.D. Cal. Mar. 3, 2021)
　.................................................................................................................4

*Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Electric Co.*,
　793 F.2d 214 (8th Cir. 1986) ............................................................22

*Int'l Petroleum Prods. & Additives Co. v. Black Gold, S.A.R.L.*,
　418 F. Supp. 3d 481 (N.D. Cal. 2019)...............................................24

*International Brotherhood of Electrical Workers v. Niagara Mohawk Power
　Corp.*,
　196 F.3d 117 (2d Cir. 1999) ...............................................................24

*Kropke v. Dunbar*,
　No. CV-16-08753-MWF, 2017 U.S. Dist. LEXIS 221805 (C.D. Cal. Sep. 1,
　2017) ...................................................................................................16

*Lansmont Corp. v. SPX Corp.*,
　2011 U.S. Dist. LEXIS 65611 (N.D. Cal. June 20, 2011) ...........20, 21

*M&G Polymers USA, LLC v. Tackett*,
　574 U.S. 427 (2015) ...........................................................................19

*Matthews v. Nat'l Football League Mgmt. Council*,
　688 F.3d 1107 (9th Cir. 2012) ..............................................................3

*NCR Corp. v. Sac-Co, Inc.*,
　43 F.3d 1076 (6th Cir. 1995) ..............................................................22

*NFL Players Ass'n v. NFl Mgmt. Council*,
　No. 10CV1671 JLS (WMC), 2011 U.S. Dist. LEXIS 865 (S.D. Cal. Jan. 5,
　2011) .....................................................................................................3

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*,
　312 F.2d 299 (2nd Cir. 1963), *cert. denied*, 373 U.S. 949 (1963) ....................22

*Pac. Motor Trucking Co. v. Auto. Machinists Union*,
　702 F.2d 176 (9th Cir. 1983) ..............................................................23

*In re Perrin, Bernard, Supowitz, Inc. v. Teamsters Union Local No. 63*,
　No. CV 14-2047-JFW (Ex), 2014 U.S. Dist. LEXIS 191263 (C.D. Cal. July 8,
　2014) .....................................................................................................3

HIRSCHFELD KRAEMER LLP

iii

*S. Cal. Gas Co. v. Util. Workers Union, Local 132*,
  265 F.3d 787 (9th Cir. 2001) .............................................................24

*SFIC Properties, Inc. v. Int'l Ass'n of Machinists Aerospace Workers*,
  103 F.3d 923 (9th Cir. 1996) ..............................................................23

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..............................................................21

*Stead Motors v. Automotive Mach. Lodge*
  1173, 886 F.2d 1200 (9th Cir. 1989) ...................................................23

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*,
  461 U.S. 757, 103 S. Ct. 2177 (1983) ...................................................4

**STATE CASES**

*Casady v. Modern Metal Spinning Mfg. Co.*,
  188 Cal. App. 2d 728 (1961) ........................................................*passim*

*Dayton Time Lock Service, Inc. v. Silent Watchman Corp.*,
  52 Cal. App. 3d 1 (1975) ...................................................................12

*Stevens Group Fund IV v. Sobrato Dev. Co.*,
  1 Cal. App. 4th 886 (1991) ................................................................14

**FEDERAL STATUTES**

9 U.S.C. §§ 9-11 ............................................................................................2

9 U.S.C. § 10(a) ...........................................................................................3

9 U.S.C. § 10(a)(4) .....................................................................................21

29 U.S.C. § 185 ......................................................................................2, 3

Federal Arbitration Act ......................................................................*passim*

Labor Management Relations Act ...............................................................2, 21

Labor Management Relations Act § 301 ................................................*passim*

HIRSCHFELD KRAEMER LLP

iv

**STATE STATUTES**

California Business and Professions Code § 16600 ...........................................12, 24

California Civil Code § 3390........................................................................10, 15, 19

California Civil Code § 3390(c) ..........................................................................20, 21

California Civil Code § 3390(d)...............................................................................24

**OTHER AUTHORITIES**

Black's Law Dictionary ............................................................................................16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. <u>INTRODUCTION</u>

The Arbitrator's Award (the "Award") at issue impermissibly orders Hyatt Hotels Corporation ("Hyatt") to do something it legally cannot do. The Award, in a contractual dispute between Hyatt and UNITE HERE, Local 11 (the "Union") involving a card check neutrality agreement – the Memorandum of Agreement ("MOA"), – is a classic example of an arbitrator improperly ignoring the law and twisting the facts to a significant degree in order to dispense his own brand of industrial justice.

The Award is fundamentally flawed in a number of respects. Most significantly, Hyatt cannot be ordered to do something it legally cannot do. The Award requires Hyatt to somehow obtain the written consent of a third-party hotel developer and owner, Relevant Group ("Relevant"), to assume contractual obligations that Relevant has outright refused to assume. The MOA, the contractual agreement at issue which Hyatt is alleged to have breached, is between Hyatt and the Union. Relevant did not sign the MOA and is not a party to the MOA. The MOA broadly addresses organizing procedures at hotels that Hyatt comes to own or operate in Los Angeles and is not just limited to the two hotels involved in this matter – the Thompson and Tommie Hollywood Hotels (the "Hotels"). Indeed, Hyatt does not have any interest or equity in Relevant nor does Hyatt have any ownership interest in or operational control of the Hotels. At the time of the alleged breach, Hyatt and Relevant's commercial relationship was and is still limited to two Franchise Agreements covering the Hotels. Notwithstanding these undisputed facts, without any explanation as to how it is to be accomplished, the Arbitrator's Award finds that Hyatt breached the MOA with the Union and directs Hyatt to do the legally impossible, as Hyatt has no power or authority under the Franchise Agreements or otherwise to require Relevant to assume or comply with the MOA between Hyatt and the Union.

HIRSCHFELD KRAEMER LLP

4889-0316-5485

While courts generally provide deference to an arbitrator's decision, an arbitrator may not construe facts or misconstrue facts so as to render a well-settled principle of law inapplicable or ignore legally dispositive facts to justify an award as the Arbitrator did here.  Such an award demonstrates the Arbitrator's manifest disregard for the law and is subject to vacatur given the well settled legal authority, that it is improper and contrary to state and federal law for triers of fact to order specific performance in a contract dispute which requires the participation and consent of a third party, *i.e.*, a person or entity not party to the contract at issue, and where, as here, compliance with such order is impossible.

Further, the Arbitrator's Award is also subject to vacatur because it disregards a codified public policy regarding grants of specific performance against third parties.

In addition, in disregarding hornbook contract law to conclude that agreements terminating two hotel management contracts did not actually terminate those contracts all to justify an incorrect and unsupported finding of breach of the MOA amounts to another manifest disregard of the law.

Finally, the Arbitrator's Award should be vacated because he exceeded his authority by defining the rights of a third party (Relevant), who was not a party to the contract in dispute nor present at the arbitration hearing.

For these reasons, and as argued in more detail below, the Award must be vacated.

## II.   <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction over this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§9-11 and Section 301 of the Labor Management Relations Act ("LMRA" or "Section 301"), 29 U.S.C. §185.

The Central District of California is the proper venue for this action pursuant to the FAA, U.S.C. §§9-11, because the Award was issued in this district.  The Central District of California also is the proper venue for this action pursuant to

2

HIRSCHFELD KRAEMER LLP

Section 301 of the LMRA, 29 U.S.C. §185, because the Union and its duly authorized officers and agents represent or act on behalf of its members in this district.

### III.   STANDARD OF REVIEW

Under the FAA, an arbitration award must be vacated where "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  FAA, 9 U.S.C. §10(a).  The shorthand for this statutory ground for vacatur under the FAA is "manifest disregard of law."  *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (*citing Kyocera Corp. v. Prudential-Bache T Servs.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc) (holding that "arbitrators 'exceed their powers' . . . when the award is 'completely irrational,' or exhibits a 'manifest disregard of law'") (citations omitted)).  An arbitrator's award is in manifest disregard of the law where it is clear from the record that the arbitrator recognized the applicable law and then ignored it.  *Id.* (*citing Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995).[1]

---

[1] There is no established Ninth Circuit precedent as to whether manifest disregard, a basis for vacatur under the FAA, is also a ground for vacatur under the Section 301 of the LMRA.  *See NFL Players Ass'n v. NFl Mgmt. Council*, No. 10CV1671 JLS (WMC), 2011 U.S. Dist. LEXIS 865, at *5-6 (S.D. Cal. Jan. 5, 2011).  Nevertheless, the Ninth Circuit (as well as various California District Courts) have consistently applied the manifest disregard standard in cases brought under Section 301.  *See Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 & n. 7 (9th Cir. 2012).  This is appropriate as the FAA "is often used as a guide when forming the federal common law of labor arbitration under [Section] 301."  *NFL Players Ass'n.*, 2011 U.S. Dist. LEXIS 865, at *5-6; *see also In re Perrin, Bernard, Supowitz, Inc. v. Teamsters Union Local No. 63*, No. CV 14-2047-JFW (Ex), 2014 U.S. Dist. LEXIS 191263, at *6 n.2 (C.D. Cal. July 8, 2014) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 9 ("The Court's disposition of this Motion would be the same whether the Court analyzed the issues under the FAA or the LMRA.  In fact, the FAA is often used 'as a source of principles to guide formulation of a federal common law of labor arbitration under

.

Section 301 also provides for vacatur of an arbitration award for specific reasons, including where an arbitration award violates public policy.  "To vacate an arbitration award on public policy grounds, [the court] must (1) find that 'an explicit, well defined and dominant policy' exists [] and (2) that 'the policy is one that specifically militates against the relief ordered by the arbitrator.'"  *Aramark Facility Servs. v. SEIU, Local 1877*, 530 F.3d 817, 823 (9th Cir. 2008) (citing *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995).

Similarly, under the FAA, a court "cannot[] enforce an award which violates public policy."  *DeMartini v. Johns*, 693 F. App'x 534 (9th Cir. 2017); *see also Herrling v. Citibank N.A.*, No. CV 20-6989 FMO (AFMx), 2021 U.S. Dist. LEXIS 40125 (C.D. Cal. Mar. 3, 2021) (considering a public policy as a basis for vacatur under the FAA).  Similar to Section 301, a public policy under the FAA "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"  *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 766, 103 S. Ct. 2177, 2183 (1983) (citing *Muschany v. United States*, 324 U.S. 49, 66 (1945); *see also E. Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000).

## IV.  FACTUAL BACKGROUND

### A.  Hyatt Assumes Hotel Management Agreements For Hotels Owned by Relevant.

In October of 2018, Hyatt acquired Two Roads Hospitality ("Two Roads") and with it Two Road's Hotel Management Agreements ("HMAs") for both of the Hotels. (Declaration of Michelle C. Freeman ["Freeman Decl."], ¶2, Exhibit ["Exh."] 1, Transcript of Virtual January 13, 2022 Arbitration Proceedings ["Arb."] 56:23-57:17, 169:8-17, 221:2-5.)  Hyatt never held title and had no ownership interest in either of the Hotels, nor did Hyatt provide any financing or loans in

_____

§ 301.'")).

HIRSCHFELD KRAEMER LLP

relation to them.  (Arb. 58:17-25; Freeman Decl. ¶7, Exh. 11, Arbitrator's Award ["Award"] 15:17-18.)  Rather, Hyatt was to manage the Hotels for Relevant, the developer and owner, pursuant to the HMAs, which had been executed in 2015 by Two Roads and Relevant.  (Arb. 60:2-5; Freeman Decl. ¶4, Exhs. 2, 3 at Recitals.) The HMAs provided, among other things, that Hyatt would be responsible for supervising, directing, and controlling the management, operation, and promotion of the Hotels.  (Freeman Decl. ¶4, Exhs. 5-6.) The HMAs also provided that Hyatt would not negotiate with any labor union without the Relevant's advance written consent.  (*Id*.)

**B.**     **Hyatt and the Union Enter into a Memorandum of Agreement Regarding Card Check Neutrality at Hotels That Hyatt Comes to Own or Manage, and Relevant Objects.**

On April 5, 2019, Hyatt and the Union executed the MOA.  (Arb. 188:21-189:7; *see also* Freeman Decl. ¶2, Exh. 2.)  The relevant portions of the MOA are as follows:

THIS MEMORANDUM OF AGREEMENT ("Agreement") is made and entered **into by and between Hyatt Hotels Corp. d/b/a Andaz West Hollywood Hotel ("Employer", "Hyatt") and of Unite Here, Local 11 (the "Union").**

1.  This Agreement **shall become a part of the collective bargaining agreement ("CBA") between the Union and the Hyatt Andaz West Hollywood** and, shall apply to any new Full Service Hotel that on or after the effective date of the CBA, **is newly owned in whole or in which Hyatt** owns a majority interest, in Los Angeles County; **is newly managed by Hyatt** in the City of Los Angeles….

3.   Notwithstanding any provision of this Agreement to the contrary, this Agreement shall apply to the Thompson Hollywood and tommie Hollywood currently under development….

13.   The parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited arbitration to Juan Carlos Gonzalez…. The arbitrator shall have no authority to alter, amend, add to, subtract from or otherwise modify or change the terms and conditions of this Agreement or engage in

5

interest arbitration….

15.  **In the event that the Employer sells, transfers, or assigns all or any part of its right, title, or interest in a Hotel or substantially all of the assets used in the operation of a Hotel,** or in the event there is a change in the form of ownership of the Employer, the Employer shall give the union reasonable advance notice thereof in writing, and **the Employer further agrees that as a condition to any such sale, assignment, or transfer, the Employer will obtain from its successor or successors in interest a written assumption of this Agreement and furnish a copy thereof to the Union**, in which event the assignor shall be relieved of its obligations hereunder to the extent that the assignor has fully transferred its right, title, or interest.

(Freeman Decl. ¶2, Exh. 2) (Emphasis added).)

Notably, in or around the same time, in April 2019, Relevant and the Union were engaged in their own negotiations regarding separate card check neutrality agreements including, apparently, for the Hotels.  (Arb. 189:24-190:7, 142:24-143:14, 144:19-146:14.)  The MOA by its terms became part of Hyatt's collective bargaining agreement for its Andaz Hotel in West Hollywood.  Relevant has no connection to or interest in the Andaz Hotel.

On September 13, 2019, Relevant, by way of a letter from its legal counsel, alleged that Hyatt had breached the HMAs by entering into the MOA with the Union, without obtaining advanced written consent from Relevant.[2]  (Arb. 195:2-197:2; Freeman Decl. ¶¶8-9, Exhs. 12-13.)  Relevant expressly threatened legal action and termination of the HMAs.  (Arb. 69:3-15; Freeman Decl. ¶9, Exh. 13.)

**C.   <u>Hyatt And Relevant Terminate the HMAs and Enter into Franchise Agreements, and Relevant Declines to Assume Hyatt's Obligations Under the MOA.</u>**

In response to Relevant's threats to terminate the HMAs and to sue Hyatt for alleged breach, Hyatt and Relevant attempted to re-negotiate the HMAs for nearly a year.  (Arb. 69:10-70:18, 71:6.)  However, on or about  March 9, 2021, Relevant

[2] Hyatt contends that it acted properly in all respects when it signed the MOA.

HYATT HOTELS CORPORATION'S MOTION TO VACATE ARBITRATION AWARD
.

again threatened Hyatt with litigation for breach of the HMAs and indicated that unless Hyatt agreed to terminate the HMAs and enter into franchise agreements for the Hotels, Relevant was going to terminate the HMAs. Relevant further added that its lender was threatening and was likely to foreclose on the Hotels, which also would have undoubtedly resulted in Hyatt being terminated as manager of the Hotels. (*Id*. at 77:22-78:23; Freeman Decl. ¶10, Exh. 14.) Blaming Hyatt, Relevant indicated that it was in serious financial duress and that it needed to secure additional financing, which required that it become a franchisee. (Arb. 77:22-78:23.) Relevant advised Hyatt that without additional financing it could no longer pay its general contractor, who had stopped working, and that the construction of the Hotels would not be completed. (*Id*. at 66:1-7.)

As a result of Relevant's threats and the real risk of foreclosure on the Hotels, which would have resulted in financial loss to Hyatt, on August 6, 2021, Hyatt and Relevant exercised their right to terminate the HMAs by executing Termination of Hotel Management Agreements (the "Termination Agreements") that among other things included mutual releases of claims. (*Id*. at 85:14-86:15; Freeman Decl. ¶5, Exhs. 7, 8.)

> (a) … Owner and Hyatt hereby agree that effective as of 11:59 p.m. where the Hotel is located on the August 6, 2021 or such other date as the parties agree to in writing (the "Effective Date"), the Management Agreement[s] shall be terminated and null and void….

(*Id*.) The Termination Agreements further provided that as a condition precedent to the terminations of the HMAs, Hyatt and Relevant had to enter into franchise agreements for both Hotels. (*Id*.) In addition, the Termination Agreements included specific and general releases of claims by Hyatt and Relevant including claims that related in any way to the HMAs and any breaches of same. (*Id*.)

On that same date, Hyatt and Relevant also entered into two new contractual agreements for the Hotels, in which Hyatt would be a franchisor and Relevant a franchisee (the "Franchise Agreements"). (Freeman Decl. ¶6, Exhs. 9, 10.) The

7

HIRSCHFELD KRAEMER LLP

HIRSCHFELD KRAEMER LLP

Franchise Agreements did not confer any ownership interest in the Hotels from Relevant to Hyatt, as Relevant retained its rights as owner of the Hotels. (*Id*.)  Under the Franchise Agreements, Hyatt had no operational rights at the Hotels and had no rights regarding employment or labor relations.   Of importance, the HMAs necessarily had to terminate vis-à-vis the Termination Agreements before the Franchise Agreements could take effect. (Freeman Decl. ¶¶4, 5, Exhs. 5-8).  At the time the parties terminated the HMAs and entered into the Franchise Agreements, neither of the Hotels had opened for business.  Hyatt had never operated either of the Hotels and never employed any putative unit employees.  (Arb. 86:21-23, 98:14-22, 204:1-19.) The Thompson opened on August 8, 2021 and the Tommie Hotel did not open until several months later in December 2021.  (*Id*. at 98:14-22.)  The Franchise Agreements are still in place.  (*Id*. at 206:20-24.)

### D.     The Arbitration over the MOA and Final Award.

Pursuant to the MOA, the Union sent demands to Hyatt regarding Hyatt's alleged breach of the MOA, and ultimately brought the underlying arbitration before Arbitrator, JC Gonzalez, Esq. who the parties had designated in the event of a dispute. (Freeman Decl. ¶2, Exh. 2, §13.)  Arbitrator Gonzalez conducted a hearing over zoom on January 13, 2022.  (*Id*. at ¶2.)  During the arbitration, Catie Cramer, Hyatt's former Vice President of Lifestyle Development and Owner Relations, testified that Relevant did not think they legally had any obligation to assume the obligations under the MOA.  (Arb. 84-85; Award 10:9-15.)  Michael D'Angelo, Hyatt's Vice President of Labor Relations, testified that, in his opinion, the MOA did not apply to Relevant because, "ultimately the [HMAs] were terminated."  (Arb. 203:4-5; Award 10:9-15.)

The parties stipulated to the following statement of the issue to be adjudicated by the Arbitrator:

> Did Hyatt Hotels Corporation breach the Memorandum of Agreement of April 5, 2019, by failing to get Relevant Group to assume the

8

obligations thereof under the termination of management agreements or franchise agreements or otherwise, which deprived Local 11 of its right and benefits under the MOA related to the Thompson and tommie Hollywood? And if so, what is the proper remedy?

(Award 3:18-22.)

On May 20, 2022, the Arbitrator issued his final Award, sustaining the Union's claim of breach and ordering Hyatt to comply with the MOA and to obtain from Relevant a written assumption of the MOA and to furnish a copy to the Union. (*Id*. at 31:12-16.)

## V.    LEGAL ARGUMENT

### A.    The Arbitrator Acted In Manifest Disregard of Well-Established Contract Law, Including A Specifically Codified Statute, Prohibiting Specific Performance By Third Parties.

The Arbitrator acted in manifest disregard of federal and California law by ordering Hyatt to obtain a written assumption of the MOA from Relevant, who did not sign the MOA and was not a party to the MOA.  Black letter law provides that specific performance should not be granted when performance depends on the consent of a third person who can withhold consent, i.e., is not party to the contract at issue. See, e.g., *Ellis v. Treat (C.C.A.)*, 236 F. 120, 124 (9th Cir. 1916); see also *Axelrod v. Osage Oil & Refining Co.*, 29 F.2d 712, 732 (8th Cir. 1928) (dissent) (*citing* Pomeroy's Equity Jurisprudence, vol. 5 (2d Ed.) § 2178, p. 489)("specific performance *will not be decreed* when performance depends on the consent of a third person who is at liberty to withhold his consent") (emphasis added.)  This straightforward longstanding legal principle has been applied consistently by various courts, including the United States Supreme Court, the Ninth Circuit, and California state courts.  Indeed, in *Ellis v. Treat*, the Ninth Circuit explained where specific performance cannot be ordered:

[W]ithin well-settled principles which govern specific performance, equity should withhold the specific relief here sought, on the ground that the complaint calls for the performance of acts *which require the participation of others not parties to the contract or to the suit*, such

9

HIRSCHFELD KRAEMER LLP

1
2
3
4
5
6

> as the execution of articles of incorporation, the election of a board of directors, the adoption of resolutions, and other details of corporate action. A court of equity will not, for instance, compel a corporation to buy in its stock in order to carry out an agreement whereby it has promised to pay for a lease of lands in stock. *Smith v. Flathead River Coal Co.*, 64 Wash. 642 [(Wash. 1911)]. Nor will it require the specific performance of an agreement to enter into a copartnership. Pomeroy Specific Performance of Contracts, § 290; *Hyer v. Richmond Traction Co.*, 168 U.S. 471 [(1897)]. Nor will it compel a defendant to buy real estate in order to carry out his contract to convey the same. *Laubengayer v. Rohde*, 167 Mich. 605 [(Mich. 1911)].

7   *Ellis, at* 124 (emphasis added). The Ninth Circuit's reasoning is expressly codified

8   in California Civil Code section 3390,[3] which prohibits specific performance for any

9   "agreement to procure the act or consent of . . . any other third person." *See also*

10  *Casady v. Modern Metal Spinning Mfg. Co.*, 188 Cal. App. 2d 728, 731 (1961)

11  (*quoting* 81 C.J.S. Specific Performance, §16b) (*citing* Williston on Contracts (rev.

12  ed.) § 1422) ("Where the defendant's performance depends on the consent or

13  approval of one not a party to the contract who is free to withhold his consent,

14  specific performance of the contract will not be decreed where it does not appear

15  that such consent or approval has been or can be obtained, or where it appears that

16  such consent or approval is withheld or refused . . . .").

17      Here, the Award makes clear that the Arbitrator was well-aware of the

18  governing body of law prohibiting specific performance as to a third party. (Award

19  24:21-28:18, 29:16-231:10; *see also* Freeman Decl. ¶3, Exh. 3, §IV(B).)  It is also

20  undisputed that Relevant is not a party to the MOA, the contract under dispute from

21  which the Award arises, which was signed only by the Union and Hyatt.[4] (Freeman

22  Decl. ¶2, Exh. 2.) It is also undisputed that Relevant has clearly and unequivocally

23  refused to assume or adopt the MOA or otherwise comply with the MOA's

24

25
_____

[3] All further references to the "Civil Code" shall refer to the California Civil Code unless otherwise noted.

26  [4] *Had* Relevant been a party to the MOA, the Union could have (and indeed would have) sought relief against Relevant directly or at least included Relevant in the Hyatt arbitration. Tellingly, the Union did not do so. The Union's failure to pursue Relevant other than by arbitrating against Hyatt is inconsistent with the idea that Relevant was a party to the MOA.

27

28

10

provisions.  (Arb. 51:16-52:13, 53:2-7, 84:20-23.) Hyatt has no equity or ownership interest in Relevant and otherwise has no power or authority to compel Relevant to comply with the Award.  (*Id.* at 58:11-25, 104:15-105:7; Freeman Decl. ¶6, Exhs. 9-10.)   Accordingly, the Award, which requires that Hyatt somehow obtain Relevant's written assent to the MOA, manifestly disregards clear and unambiguous contract law.

        1.    The Arbitrator's Attempt To Distinguish Controlling Law By Cherry-picking, Ignoring, And Misconstruing Facts Was A Manifest Disregard Of The Law.

Construing facts in a manner to render a well-settled principle of law inapplicable constitutes manifest disregard of the law.  *See e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009).  Here, the Arbitrator tries to sidestep black letter law against ordering the specific performance of a third party to a contract by ignoring the underlying legal principles cited by Hyatt, *Ellis and Axelrod,* and California law, and pointing to immaterial or irrelevant factual distinctions to improperly implement his own brand of industrial justice.   The Arbitrator states the following:

> *Ellis* concerns the request for specific enforcement of a contract that doesn't exist, from a corporation which hasn't been formed.  The third party, therefore, is a corporation which hasn't even been created.  In *Axelrod*, Hyatt quotes the dissent in which Continental Oil Company and the Osage Company were strangers to each other with no contractual relationship between them and their respective interests were hostile, the Continental Oil Company having derived its title through Axelrod.  This is the title which the Osage Company directly contested.  The dissent continues, 'specific performance will not be decreed when performance depends on the consent of a third person who is at liberty to withhold his consent.'

(Award 25:21-26:5.)  Similarly, with respect to *Casady*, the Arbitrator again seizes on minute inconsequential factual differences to reach his desired outcome, stating:

> The Franchise Agreement[s] [between Hyatt and Relevant were] created after the MOA was signed – not before.  As a result, *Casady's* reference to prior contract obligations does not substantiate the argument against specific performance in the case before us.

(Award 28:1-4.) (Emphasis omitted.)

HYATT HOTELS CORPORATION'S MOTION TO VACATE ARBITRATION AWARD

*Comedy Club* is instructive on this issue.  In *Comedy Club*, the arbitrator issued an award that stated, in part, that provision section 9.j. of a trademark agreement between Comedy Club, Inc. ("CCI") and Improv West ("Improv"), which provided that CCI was prohibited from opening any non-Improv comedy clubs during the term of a trademark agreement was a "valid and enforceable in-term covenant not to compete" and remained valid "for the remaining term of the Agreement."   553 F.3d at 1281-82.  CCI appealed the district court's order confirming the arbitrator's award, arguing "that the arbitrator's validation of [section] 9.j. [wa]s in manifest disregard of the law." *Id.* at 1290.  The Ninth Circuit noted that "[u]nder [California Business and Professions Code section ("CBPC")] 16600, it is well established that broad covenants not to compete are void unless they involve a situation where a person sells the goodwill of a business [or] where a partner agrees not to compete in anticipation of dissolution of a partnership," "or 'they are necessary to protect . . . trade secrets.'" *Id.*

The Ninth Circuit also discussed *Dayton Time Lock Service, Inc. v. Silent Watchman Corp.*, 52 Cal. App. 3d 1 (1975), where the California Court of Appeal addressed an in-term "exclusive dealing clause" in a franchise agreement and imposed antitrust law standards when interpreting such agreement. *Id.* at 1291.  The Ninth Circuit stated that *Dayton Time Lock* made "evident that under CBPC § 16600 an in-term covenant not to compete in a franchise-like agreement will be void if it 'forceclose[s] competition in a substantial share' of a business, trade, or market." *Id.*  However, in *Comedy Club*, the arbitrator ruled that "*Dayton Time Lock* [wa]s inapplicable" because it "involved an attack on an exclusive dealing contract under *antitrust laws*," and "[t]he type of 'rule of reason' analysis applied in antitrust cases – involving the determination whether a particular agreement unreasonably restricts competition generally in a defined geographic and product market – is not applicable to a determination of illegality under Section 16600 . . . because 'California's antitrust statute . . . is separate and distinct from § 16600 of the Business &

12

HIRSCHFELD KRAEMER LLP

Professions Code.'" *Id.* at 1292 (emphasis in original). The Ninth Circuit held:

> The arbitrator's award, while aware of *Dayton Time Lock*, interpreted it in a way to render it inapplicable to this case. However, as we have explained, *Dayton Time Lock* established that under CBPC § 16600 in-term covenants not to compete cannot prevent a party from engaging in its business or trade in a substantial section of the market. The arbitrator's award effectively quarantines CCI from engaging in its business in forty-eight states until 2019 ***and does not follow well-established California law***. Even under the permissive standard with which we review arbitral decisions, the economic restraint of § 9.j. on competition is too broad to be countenanced in light of the clear prohibition of § 16600, as interpreted by the California courts. The grounds given by the arbitrator for disregarding *Dayton Time Lock* are fundamentally incorrect.[] We hold that the arbitrator's ruling that § 9.j. is a valid covenant not to compete ignores CBPC § 16600 and thus is in manifest disregard of the law. To comply with § 16600, the covenant not to compete must be narrowly tailored to relate to the areas in which CCI is operating Improve clubs under the license agreement.

*Id.* at 1293 (internal citations omitted) (emphasis added).

Similarly, the grounds the Arbitrator provided to disregard *Ellis* and *Axelrod* (as well as California law) are improper and erroneous, and render a result that make it, without a doubt, impossible for Hyatt to comply. Like the arbitrator in *Comedy Club*, the Arbitrator here was aware of applicable law and attempted to distinguish around it so as to make it inapplicable. (Award 24:21-28:18, 29:16-231:10.) Indeed, rather than engaging in any meaningful discussion regarding specific performance by a third party whatsoever, the Arbitrator isolated extraneous non-dispositive facts from cases cited by Hyatt to reach a conclusion that the Arbitrator opined necessitated a different outcome.[5] Specific to *Ellis*, the Arbitrator highlighted the fact that *Ellis* involved enforcement of a contract that did not exist, from a corporation that had not been formed, to be decisive factors as to why specific performance was improper. (Award 25:21-26:15.) Upon that basis, the Arbitrator concluded that the existence of the MOA between Hyatt and the Union somehow allowed him to require specific performance of a third party to the MOA, Relevant. (*Id.*) The Arbitrator also declared *Axelrod* inapplicable, claiming that because Hyatt

---

[5] At most, the Arbitrator restated Hyatt's position with respect to specific performance as it applies to third parties. (Award 25:6-21.)

HYATT HOTELS CORPORATION'S MOTION TO VACATE ARBITRATION AWARD

HIRSCHFELD KRAEMER LLP

1  and Relevant had entered into HMAs, that requiring specific performance of

2  Relevant under the MOA, an agreement to which it did not sign and was not a party,

3  was somehow proper, ignoring that Hyatt's germane contractual relationship with

4  Relevant at the time the Award issued was that of franchisee and franchisor.  (*Id*.)

5  Specifically, the Arbitrator found:

> [I]t is not reasonable to refer to Relevant [Group] as a non-party or a
> third party . . . .  The reason a third-party status is not appropriate is
> because Relevant [Group], as the Owner to the Hotels, and Hyatt, as
> the Operator, both had been bound by the MOA.  Since Hyatt, charged
> with managing the workforce, signed the MOA, Relevant [Group] is
> bound to it as well.[6]  Therefore, Relevant [Group] is not a 'stranger'
> to the MOA, in a matter of, Hyatt substantiates that Relevant [Group]
> knowingly approved of the MOA through their co-founder, Mr.
> Richard Heyman.  The terms of the HMAs explicitly require Relevant
> to approve any union related agreements.  <u>Therefore, Relevant [Group]
> is not a valid non-party or third party to the MOA.</u>

12  (*Id*. at 25:21-26:15 (emphasis in original).)

13         There is no basis in fact or law that supports the Arbitrator's contortive

14  gymnastics relating to Relevant's purported relationship to the MOA.   The

15  Arbitrator creates a red herring argument and bases his erroneous conclusion upon

16  it.  The fact remains that the HMAs between Relevant and Hyatt were terminated

17  and that the operative commercial and contractual relationship between Hyatt and

18  Relevant is that of franchisor and franchisee.  The appropriate analysis is whether

19  Hyatt has any power or authority under the Franchise Agreements – not the

20  terminated HMAs – to compel Relevant to assume the MOA.  Hyatt currently has

21  no such power or authority and the Arbitrator failed to analyze this.  Similar to the

22  arbitrator in *Comedy Club*, the Arbitrator provided fundamentally incorrect grounds

23  to disregard the well-established contract law that specific performance cannot be

24

25

26  _____
   [6] Notably, neither of the Hotels were opened at the time the Union and Hyatt

27  executed the MOA.  The MOA could not and would not apply to the Hotels unless
   and until they were operating and staffed by Hyatt.  Neither of which occurred here

28  where the HMAs were terminated before the Hotels opened and before Hyatt staffed
   the Hotels.

HIRSCHFELD KRAEMER LLP

decreed to obtain the agreement of a non-party to such agreement.  (See *infra* §III.V.A.ii-iii.)

Further, the Arbitrator cited to the timing of the Franchise Agreements occurring on the same day as the terminations of the HMAs to summarily dismiss the legal authority in *Casady*, a case cited by Hyatt with facts analogous to the facts at issue.  (Award 30:22-31:10.)  In *Casady*, the Court of Appeal held that the trial court properly refused to grant a wife's request for specific performance against a corporation (like Relevant) who was not a party to the property settlement agreement between the wife and her husband that agreed to award her shares of stock.  *See* 188 Cal. App. 2d at 734 (explaining appellant was seeking "specific performance against respondent corporation and respondent Cimral neither of whom was a party to her contract with *Casady*" and "the trial court correctly concluded that specific performance should ***not*** be decreed.") (Emphasis in original.) The timing of the Franchise Agreements is another red herring argument manufactured by the Arbitrator in a futile attempt to support his desired outcome. The fact that Hyatt terminated the HMAs, and entered into the Franchise Agreements on the same day, is neither material nor dispositive as to whether Relevant can be compelled by Hyatt to assume the contractual obligations under the MOA.

Finally, the Arbitrator conveniently ignored the clear mandate of Civil Code section 3390.  The entire Award makes only two references to Civil Code section 3390, with neither reference addressing the standard, or its applicability to the facts, in any meaningful way.  The first reference is merely a regurgitation of Hyatt's position that specific performance cannot be compelled by a third party.  (Award 25:7-16.)  The second reference is only to note that the *Casady* decision references Civil Code section 3390.  (*Id*. at 27:11-14.)  Thus, while the Arbitrator was well aware of Civil Code section 3390, he failed to analyze whether the section was applicable to the facts at hand.  Indeed, had he done so, he would not have been able to ignore the fact that he had no authority to order Relevant to do anything.  Such a

HIRSCHFELD KRAEMER LLP

clear disregard for well-established, and applicable law, rises to the level of manifest disregard requiring vacatur.

In sum, the Award makes clear that the Arbitrator knew of the black letter law prohibiting specific performance by third parties, as well as case law supporting that legal principle, and either blatantly ignored it or erroneously attempted to distinguish cases on a factual basis to arrive at the conclusion he wanted.  Such conduct is a clear manifest disregard for the law and the Award must be vacated.

> 2.  The Arbitrator's Conclusion That Relevant Was Not A Valid Non-Party To The MOA Is Irreconcilable With The Undisputed Facts.

"In some circumstances, [] legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." *Coutee v. Barington Capital Grp.*, L.P., 336 F.3d 1128, 1133 (9th Cir. 2003). *In Coutee*, "the Ninth Circuit explained that where the clear and undisputed evidence showed that an employee participated in a strike, the arbitrator's conclusion that the same employee did not strike would be in manifest disregard of the law" due to the arbitrator's "willful refusal to apply the law correctly to the facts."  *Kropke v. Dunbar*, No. CV-16-08753-MWF (FFMx), 2017 U.S. Dist. LEXIS 221805, at *21 (C.D. Cal. Sep. 1, 2017) (emphasis omitted).  Here, the Arbitrator refused to apply the law prohibiting specific performance correctly to the relevant facts – *i.e.*, that Relevant was not a party to the MOA.

A "third party" is "[a] person not connected to a contract but may be affected by its outcome."  Black's Law Dictionary, 2d edition.  This is exactly the case here. As reiterated multiple time throughout this Motion, Hyatt and the Union were the only two signatories to the MOA, an undisputed fact acknowledged by the Arbitrator.  (Award 2:11-13 ("Hyatt signed an MOA with the Union providing for a card check neutrality agreement with a successor clause").)  As owner of the Hotels, Relevant *could* have been affected by the MOA had the hotels opened with Hyatt as the operator, managing employees, all of which did *not* happen. (The HMAs were

HIRSCHFELD KRAEMER LLP

1  terminated before the Hotels opened and were operating and before Hyatt hired any

2  putative unit employees.)  The fact that Relevant could have been affected by the

3  MOA does not convert Relevant from a third party to an actual party to the MOA.

4  As discussed above, if the Union believed that Relevant was a party to the MOA, it

5  could have and would have brought the instant arbitration directly against Relevant

6  or included Relevant in the arbitration against Hyatt.  Indeed, it did not so proceed

7  because it could not.  Relevant not only was not signatory, it contested Hyatt's right

8  to have executed the MOA and since has  refused to agree to be bound by the MOA's

9  obligations as to the Hotels.  It is also clear from the language of the MOA itself

10 who the parties to it are – Hyatt and the Union.  (Freeman Decl. ¶2, Exh. 2) The

11 MOA is to become part of Hyatt's Andaz West Hollywood's collective bargaining

12 agreement and applies to all full service hotels Hyatt comes to own or operate in Los

13 Angeles during its terms.  The MOA is not just an agreement that was to apply to

14 the two Relevant Hotels. These are the undisputed facts. The Arbitrator's bald

15 statement made without evidence or legal support that Relevant though a non-

16 signatory was somehow bound to the MOA runs contrary to the undisputed facts.

17 This vacuous arbitral mysticism cannot change this and the arbitrator cannot choose

18 to ignore such a dispositive fact.

19     *Casady* is instructive in this situation and supports vacating the Arbitrator's

20 award.  In *Casady*, specific performance was denied where a corporation was not a

21 party to the property settlement agreement between the husband and wife, but the

22 corporation could have been affected by the property settlement agreement if the

23 court had ordered it to issue a new stock certificate to the wife.  188 Cal. App. 2d at

24 729, 733.   There is no dispute that Relevant did not sign the MOA between the

25 Union and Hyatt.  Although Relevant would have certainly been impacted by the

26 MOA, that fact in and of itself does not make it a party to the MOA and the law is

27 clear that specific performance cannot be ordered as to third parties.  Accordingly,

28 the Award "is legally irreconcilable with the undisputed facts" and is therefore in

17

manifest disregard of the law. *Coutee*, 336 F.3d at 1133. It is only by ignoring the facts that (1) Relevant was not a named or defined party to and did not sign the MOA, (2) the HMAs were terminated before the Hotels opened and Hyatt hired employees; (3) Relevant refuses to assume or comply with the MOA; and (4) Hyatt has no power or authority pursuant to the Franchise Agreements or otherwise to now impose the MOA on Relevant, that the Arbitrator is able to order specific performance as to Relevant. Such a plenary dismissal of dispositive facts is exactly what the Ninth Circuit held to be a manifest disregard of the law in *Coutee*.

Even assuming *arguendo,* that the Arbitrator is correct and Hyatt is required to obtain Relevant's assumption of the MOA, that does not change the reality that Relevant is not party to the MOA and refuses to comply, nor does it somehow confer the Arbitrator with the power to direct and determine the rights and obligations of Relevant, a non-party to the arbitration.[7] (Award 19:7-20:12.)

> 3.   The Arbitrator's Holding that Hyatt Breached the MOA Based On His Conclusion That The Termination Agreements Did Not Terminate The HMAs, And Instead, Execution Of The Termination Agreements and Franchise Agreements Resulted In A "Reorganization", Was In Manifest Disregard Of Basic Contract Law Principles.

The Arbitrator manifestly disregarded the most basic of contract law principles by finding that the Termination Agreements that by their terms terminated the HMAs somehow did not terminate the HMAs. (Award 17:16-20, 19:17-20:8.) This finding was a necessary predicate for the Arbitrator's holding that Hyatt breached the MOA by failing to follow its successorship provision. In order to conclude that a right was transferred from Hyatt to Relevant and thus that the successorship provision even applied, the Arbitrator had to conclude (erroneously) that the HMAs did not terminate and thus rights under the HMAs were not terminated and could be transferred. "'Where the words of a contract in writing are

---

[7] Indeed, the Arbitrator's decision entirely overlooks Relevant's due process rights as Relevant did not execute an agreement to arbitrate, nor was it a party to the arbitration where its rights and obligations were decided.   (See *infra* §V.C.)

18

HIRSCHFELD KRAEMER LLP

clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.'" *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (citing 11 R. Lord, Williston on Contracts §30:6, p. 108 (4th ed. 2012). The plain language of the Termination Agreements terminate the HMAs in their entirety. (Freeman Decl., ¶5, Exh. 7, §2(a), Exh. 8, §2(a) (Effective August 6, 2021 "the [HMAs] shall be terminated and null and void…".) Thus, even if the HMAs constituted a right of Hyatt under the MOA's successorship provision, that fact is irrelevant as the HMAs were terminated by the plain language of the Termination Agreements and all germane rights extinguished – "terminated and null and void." (*Id.*; Award 15:3-6.) The Arbitrator's failure to construe the Termination Agreements in accord with their plain clear language and meaning demonstrates the Arbitrator's manifest disregard for basic contract law. This failure alone justifies vacatur.

**B.    The Arbitrator Acted In Manifest Disregard Of Law By Awarding Specific Performance That Is Impossible For Hyatt To Comply With.**

The Arbitrator also acted in manifest disregard of the law in that Hyatt's compliance with the Award is impossible as Hyatt's compliance is entirely dependent upon Relevant, who is at liberty to withhold its consent to assume any of Hyatt's contractual obligations under the MOA. (Award 26:16-27:5.) "Where the defendant's performance depends on the consent or approval of one not a party to the contract who is free to withhold his consent, specific performance of the contract will not be decreed where it does not appear that such consent or approval has been or can be obtained, or where it appears that such consent or approval is withheld or refused or has become impossible." *Casady*, 188 Cal. App. 2d at 731 (*quoting* 81 C.J.S. Specific Performance, § 16b) (*citing* Williston on Contracts (rev. ed.) § 1422). "The defense . . . is impossibility of performance, codified by section 3390 of the Civil Code: 'The following obligations cannot be specifically enforced . . . 4. An agreement to perform an act which the party has not power lawfully to preform when

HIRSCHFELD KRAEMER LLP

1   required to do so.'"  *Id.* at 732.  "The inability must exist when performance is
2   required by the court rather than at the time the contract is made."  *Lansmont Corp.*
3   *v. SPX Corp.*, 2011 U.S. Dist. LEXIS 65611, *10 (N.D. Cal. June 20, 2011) (*citing*
4   *Stevens Group Fund IV v. Sobrato Dev. Co.*, 1 Cal. App. 4th 886, 894 (1991)).

5       While the Arbitrator acknowledged Civil Code section 3390(c) and the
6   *Casady* decision, he blatantly ignored them, as well as Hyatt's arguments – that
7   Hyatt and Relevant are in a franchisor and franchisee contractual relationship and
8   Relevant refuses to comply with the MOA, a contract to which it is a third party.
9   (Award 26:16-28:5; Arb. 51:16-52:13, 53:2-7, 202:15-23.)  Instead, the Arbitrator
10  highlights the timing of the agreements, and nothing more: "The Franchise
11  Agreement [between Hyatt and Relevant] was created after the MOA was signed –
12  not before.  As a result, *Casady's* reference to prior contract obligations does not
13  substantiate the argument against specific performance in the case before us."
14  (Award 28:1-4.) (Emphasis omitted.)

15      Again, the Arbitrator deliberately and erroneously interpreted *Casady* and
16  Civil Code section 3390(c) in a way to make them inapplicable to this case by
17  focusing on an "example" the *Casady* court provided of impossibility.  188 Cal.
18  App. 2d at 731 ("***for example***, specific performance would result in compelling a
19  defendant to violate a prior contract with [a] third person") (Emphasis added.).  Civil
20  Code section 3390(c) contains no such limitation.  In fact, it provides that an
21  "obligation[] cannot be specifically enforced" if "[a]n agreement to perform an act
22  which the party has not power lawfully to perform **when required to do so**.'"
23  (Emphasis added.)

24      As set forth in Hyatt's closing brief, and as is acknowledged in the Award,
25  "[t]he inability must exist when performance is required by the court rather than at
26  the time the contract is made."  *Lansmont Corp. v. SPX Corp.*, 2011 U.S. Dist.
27  LEXIS 65611, *10 (N.D. Cal. June 20, 2011) (*citing Stevens Group Fund IV v.*
28  *Sobrato Dev. Co.*, 1 Cal. App. 4th 886, 894 (1991)); Award 26:23-27:5; Freeman

20

HIRSCHFELD KRAEMER LLP

HIRSCHFELD KRAEMER LLP

Decl. ¶3, Exh. 3 at §IV(D).  The Arbitrator ignored Civil Code section 3390(c)'s plain language and the *Lansmont* decision.  It is impossible for Hyatt to obtain Relevant's assumption of the MOA as Hyatt at the time of the Award did not have and still has no power to require Relevant to comply and no recourse if Relevant refuses.  The mere fact that Hyatt entered into the Franchise Agreements with Relevant does not give it the power or authority to compel Relevant to assume the MOA.  Quite the contrary.  A review of the Franchise Agreements makes clear that there is nothing in either agreement that gives Hyatt such power or authority.  Indeed, the Franchise Agreements expressly provide that

> Hyatt does not dictate or control labor or employment matters for franchisees or their employees…. Franchisee is solely responsible for determining the terms and conditions of employment for all Hotel employees [], for all decisions concerning the hiring, firing, and discipline of Hotel employees, and for all other aspects of the Hotel's labor relations and employment practices.

(Freeman Decl. ¶6, Exh. 9, §4.3; Exh. 10, §4.3.)

Thus, it is legally impossible for Hyatt to compel Relevant to assume the MOA and the Award should be vacated for this additional reason.

**C.**     **The Award Should Also Be Vacated Under The FAA And the LMRA Because The Arbitrator Exceeded His Authority by Defining the Rights and Obligations of Relevant, A Non-Party to the Arbitration.[8]**

An arbitrator exceeds his authority where he seeks to "arbitrate disputes between [a party to the arbitration] and a third party." *Elier Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994); see also 9 U.S.C. §10(a)(4).  "[A] decision whether parties other than those formally signatories to an arbitration clause

---

[8] Both the FAA and Section 301 provide for vacatur if an arbitrator exceeds his authority under the relevant contract.  See 9 U.S.C. §10(a)(4); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001) (identifying the basis upon which the Ninth Circuit permits vacatur under Section 301, including "when an arbitrator exceeds the scope of the issues submitted").  Courts typically assess whether an arbitrator exceeded his authority under the FAA and Section 301 in tandem, as Hyatt does here.  *See e.g.*, New United Motor Mfg. v. UAW Local 2244, 617 F. Supp. 2d 948, 960-963 (N.D. Cal. 2008).

21

may have their rights and obligations determined by an arbitrator when that issue has not been submitted to him is not within the province of the arbitrator himself but only of the court." *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2nd Cir. 1963), *cert. denied*, 373 U.S. 949 (1963); *see also Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Electric Co.*, 793 F.2d 214, 216 (8th Cir. 1986) (holding arbitrator's award was unenforceable against employer not party to a collective bargaining agreement, grievance proceedings, or the arbitration); *NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995) (holding arbitrator exceeded his powers by awarding punitive damages to nonparties); *Dist. Council 1707 v. Ass'n of Black Soc. Workers Day Care*, 2010 U.S. Dist. LEXIS 26650, at *6 (S.D.N.Y. Mar. 22, 2010) (holding arbitration award could not be confirmed against a non-party to the arbitration in a case that involved an arbitration award under a collective bargaining agreement) (*citing Orion Shipping & Trading Co.*, 312 F.2d at 301); *Amedeo Hotels L.P. v. New York Hotel & Motel Trades Council*, 2011 U.S. Dist. LEXIS 55032, at *29 (S.D.N.Y. May 17, 2011) (vacating arbitration award against hotel manager that impacted hotel owner who was not a party to the industry wide collective bargaining agreement ("IWA") containing an arbitration agreement or "me too" agreement adopting the IWA).

The MOA states "*[t]he parties* agree that any disputes over the interpretation or application of the Agreement shall be submitted to expedited arbitration." (Freeman Decl. ¶2, Exh. 2, §13 (emphasis added).)  The "parties" is explicitly defined in the MOA as Hyatt and the Union, and the Arbitrator's power is expressly limited "to order the non-compliant *party* to comply with the Agreement." (*Id.*)  As discussed at length above, Relevant is not a party to the MOA.  Nevertheless, the Arbitrator orders Hyatt to "obtain" Relevant's "written assumption of the MOA." (Award 31:12-16.)

The fact that the Arbitrator attempted to carefully craft the Award to appear to order only Hyatt's performance, and not Relevant's, cannot save the Arbitrator's

22

HIRSCHFELD KRAEMER LLP

brazen overstep of his authority.  The Award still mandates acts by Relevant in that Relevant must execute a "written assumption of the MOA" in order for Hyatt to be able to comply.  Arbitrators cannot "disregard contract provisions to achieve a desired result." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1167 (9th Cir. 2019); see also *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177, 177 (9th Cir. 1983) (holding that an arbitrator's conduct of "disregard[ing] a specific contract provision to correct what he perceived as an injustice" was improper.)  That's especially true here where the MOA expressly limits the Arbitrator's authority: "The arbitrator shall have no authority to alter, amend, add to, subtract from or otherwise modify or change the terms and conditions of this Agreement or engage in interest arbitration." (Freeman Decl. ¶2, Exh. 2, §13.)  Despite the foregoing, the Arbitrator disregards the fact that the MOA was only an agreement between Hyatt and the Union to achieve his desired result to somehow have Relevant, a third party, assume Hyatt's contractual obligations under the MOA.  The Arbitrator has no authority whatsoever over Relevant. (*Id.*)  The Arbitrator's power arises solely from the arbitration provision in the MOA to which Relevant was clearly not a party. (*Id.*)  The Union undoubtedly understood this reality as it tellingly did not even try to compel Relevant to arbitration.  Accordingly, the Arbitrator exceeded his authority by ordering a third party to the MOA and a non-party to the arbitration to engage in certain conduct pursuant to the MOA.

### D.   The Award Should Also Be Vacated Under Either The FAA or Section 301 Because The Award Violates Public Policy.

"One of the exceptions to the requirement that courts defer to the awards of arbitrators is the now-settled rule that a court need not, in fact cannot, enforce an award which violates public policy." *Stead Motors v. Automotive Mach. Lodge* 1173, 886 F.2d 1200, 1209 (9th Cir. 1989); accord *SFIC Properties, Inc. v. Int'l Ass'n of Machinists Aerospace Workers*, 103 F.3d 923, 925 (9th Cir. 1996). Under

HIRSCHFELD KRAEMER LLP

both the FFA and Section 301, whether an arbitration award violates public policy is "for the court to determine." *Aramark Facility Serv.*, 530 F.3d at 828; *S. Cal. Gas Co. v. Util. Workers Union, Local 132*, 265 F.3d 787, 794 (9th Cir. 2001). The court must determine "whether the award itself, as contrasted with the reasoning that underlies the award, 'create[s] [an] explicit conflict with other laws and legal precedents' and thus clearly violates an identifiable public policy." *International Brotherhood of Electrical Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 125 (2d Cir. 1999) *citing Niagara Mohawk I*, 143 F.3d at 716.

Civil Code section 3390(d) provides that "[a]n agreement to procure the act or consent . . . of any third person" cannot be specifically enforced. Civil Code section 3390(d) is an "an explicit, well defined and dominant policy." See *Aramark Facility Serv.*, 530 F.3d at 823; s*ee also Int'l Petroleum Prods. & Additives Co. v. Black Gold, S.A.R.L.*, 418 F. Supp. 3d 481 (N.D. Cal. 2019) (finding that Business and Professions Code section 16600 was codified public policy); *Golden v. O'Melveny & Myers LLP*, No. 2:14-cv-08725-CAS(AGRx), 2019 U.S. Dist. LEXIS 191158 (C.D. Cal. Nov. 1, 2019) (finding California's Rules of Professional Conduct for attorneys to be an expression of public policy).

Here, the Arbitrator's Award violates established public policy. The remedy awarded by the Arbitrator requiring that Hyatt somehow obtain a third party's assumption of Hyatt's contractual obligations under the MOA is in clear contravention of California's establish public policy as codified in Civil Code section 3390(d). The public policy against specific performance of third parties is well settled and militates against the Arbitrator's Award as a contractual remedy for Hyatt's alleged breach of the MOA. As discussed above at length, Hyatt cannot possibly compel Relevant to assume any contractual obligations to a contract to which it did not enter. The Arbitrator's Award is completely silent as to how Hyatt could even comply with the directive. Even if the Arbitrator is correct in his reasoning that Hyatt breached the MOA with the Union, Hyatt has in essence no

24

choice but to violate the Arbitrator's Award given that Hyatt has no ownership or interest in Relevant nor power or authority under the Franchise Agreements or otherwise to get Relevant to do what the Award requires.  Thus, Hyatt has no means to compel Relevant to do what the Award directs.  This paradox is precisely why the Award is against public policy as codified in the Civil Code and should be vacated.

## VI.    <u>CONCLUSION</u>

In light of the above facts and law, Hyatt respectfully requests that the Court vacate the Arbitrator's Award in its entirety.

Dated:  August 18, 2022                                  HIRSCHFELD KRAEMER LLP


By: <u>/s/ Michelle C. Freeman</u>
Keith D. Grossman
Hieu T. Williams
Michelle C. Freeman
Attorneys for Petitioner,
HYATT HOTELS CORPORATION

HYATT HOTELS CORPORATION'S MOTION TO VACATE ARBITRATION AWARD