JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYATT HOTELS CORPORATION,<br><br>             Petitioner,<br><br>vs.<br><br>UNITE HERE LOCAL 11,<br><br>             Respondent. | Case No. 2:22-cv-5858-JFW-Ex<br><br>**STATEMENT OF DECISION REGARDING PETITIONER HYATT HOTELS CORPORATION'S MOTION TO VACATE ARBITRATION AWARD**<br><br>Hearing Date: October 17, 2022<br>Hearing Time: 1:30 p.m.<br>Courtroom:   7A<br>Judge:         John F. Walter |

On September 13, 2022, Petitioner Hyatt Hotels Corporation ("Hyatt") filed an Amended Motion to Vacate Arbitration Award. On September 26, 2022, Respondent Unite Here Local 11 (the "Union") filed its Opposition. On October 3, 2022, Hyatt filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. FACTUAL BACKGROUND

### A. The Contractual Agreements

In or about October 2018, Hyatt acquired Two Roads Hospitality ("Two Roads") and the existing Two Road's Hotel Management Agreements ("HMAs") for the Thompson and Tommie Hollywood Hotels (the "Hotels"). Hyatt never took title and had no ownership interest in either of the Hotels, nor did Hyatt provide any financing or loans in connection with the Hotels. Hyatt would be responsible for managing the Hotels for Relevant Group ("Relevant"), the developer and owner, pursuant to the HMAs, which had been entered into 2015 by Two Roads and Relevant. The HMAs provided, among other things, that Hyatt would be responsible for supervising, directing, and controlling the management, operation, and promotion of the Hotels. The HMAs also expressly provided that Hyatt would not negotiate with any labor union without Relevant's advance written consent.

On April 5, 2019, Hyatt and the Union entered into a card check neutrality agreement, referred to as the Memorandum of Agreement ("MOA"), which by its terms applied to the Hotels. Hyatt represents that it had authority to sign the MOA pursuant to the direction of Relevant's partner and co-founder, Richard Heyman.[1]

However, on September 13, 2019, Relevant, by way of a letter from its legal counsel, alleged that Hyatt had breached the HMAs by entering into the MOA with the Union, without obtaining advanced written consent from Relevant, and threatened legal action and termination of the HMAs. Hyatt and Relevant subsequently attempted to re-negotiate the HMAs for nearly a year. On or about March 9, 2021, Relevant again threatened Hyatt with litigation for breach of the HMAs and indicated that it was at risk of foreclosure by its lenders and that it was under financial duress that was preventing it from completing construction and opening the Hotels. Relevant made it clear that unless Hyatt agreed to terminate the

---

[1] It is clear, however, that Relevant, who was not a party to the arbitration and could not represent its interests, contends otherwise.

HMAs and enter into franchise agreements for the Hotels, the HMAs would be terminated by Relevant or its lender or that the Hotels would never be completed and opened.

On August 6, 2021, Hyatt and Relevant entered the Termination of Hotel Management Agreements (the "Termination Agreements"), which provided that, as a condition precedent to the terminations of the HMAs, Hyatt and Relevant would enter into franchise agreements for both Hotels. On that same date, Hyatt and Relevant also entered into two new agreements for the Hotels, whereby Hyatt would become a franchisor and Relevant a franchisee (the "Franchise Agreements"). The Franchise Agreements did not transfer or confer any ownership interest in the Hotels from Relevant to Hyatt, and Relevant retained all of its rights as the owner of the Hotels. Under the Franchise Agreements, Hyatt had no operational rights at the Hotels and had no rights regarding employment or labor relations.

At the time Hyatt and Relevant terminated the HMAs and entered into the Franchise Agreements, neither of the Hotels had opened for business. Hyatt had never operated either of the Hotels and never employed any putative bargaining unit employees. The Thompson opened on August 8, 2021, and the Tommie Hotel did not open until several months later in December 2021. The Franchise Agreements are still in effect.

### B. The Arbitration Regarding The MOA and Final Award

Pursuant to the MOA, the Union sent demands to Hyatt regarding Hyatt's alleged breach of the MOA, and ultimately brought the underlying arbitration before Arbitrator, JC Gonzalez, Esq. ("Arbitrator"), who the parties had agreed to or designated in the event of a dispute. The Arbitrator conducted a hearing over zoom on January 13, 2022. During the arbitration, Hyatt representatives testified that Relevant claimed that it did not have any obligation (legal or otherwise) to assume the obligations under the MOA and that Relevant had, in fact, refused to assume the MOA.

The parties stipulated to the following statement of the issue to be adjudicated by the Arbitrator:

> Did Hyatt [] breach the [MOA], by failing to get Relevant [] to assume the obligations thereof under the Termination of [the HMA] or [F]ranchise [A]greements or otherwise, which deprived [the Union] of its right and benefits under the MOA related to the [Hotels]? And if so, what is the proper remedy?

On May 20, 2022, the Arbitrator issued his final Award ("Award"), sustaining the Union's claim of breach and ordering Hyatt to comply with the MOA by obtaining from Relevant a written assumption of the MOA and furnishing a copy of Relevant's written assumption to the Union. The Arbitrator did not fashion or make any orders as to how Hyatt was supposed to obtain Relevant's written assumption of the MOA given that Relevant was not a party to the MOA.

## II. STANDARD OF REVIEW

Both section 301 of the Labor Management Relations Act ("LMRA") and the Federal Arbitration Act ("FAA") grant district courts the authority to vacate a final arbitration award.[2] 29 U.S.C. § 185; 9 U.S.C. § 9-11. However, "judicial review of an arbitration award is both limited and highly deferential." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996) (citation omitted). Indeed, the FAA permits a district court to vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption [on the part of the arbitrators]; (3) where the arbitrators were guilty of . . . misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted

---

[2] Without expressly deciding the question, the Ninth Circuit has assumed that the Federal Arbitration Act ("FAA") applies to arbitration of collective bargaining agreements. *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 & n. 7 (9th Cir. 2012). In any event, the Court's ruling on this Motion would be the same whether the Court analyzed the issues under the FAA or the LMRA.

was not made.

9 U.S.C. § 10(a); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding Section 10 provides the FAA's exclusive grounds for vacatur of an arbitration award).

The Court's review of an arbitrator's decision under section 301 of the LMRA is also "extremely limited." *Sheet Metal Workers Intern. Ass'n, Local No. 359, AFL-CIO v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988).

> The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from the contract. If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.

*Id.* (internal citations omitted). In general, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Garvey v. Roberts*, 203 F.3d 580, 588 (9th Cir. 2000) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Notwithstanding the foregoing, the Ninth Circuit has "identified four instances in which vacatur of an arbitration award under section 301 is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001) (citations omitted); *see also S. Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792-93 (9th Cir. 2001).

## III. LEGAL ANALYSIS

### A. The Arbitrator Acted In Manifest Disregard Of Well-Established Law By Requiring Hyatt To Obtain Relevant's Assumption Of The MOA

Under the FAA, an arbitration award must be vacated where "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." FAA, 9 U.S.C. §10(a); *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, __ F.4th __, 2022 WL 17748109, at *6 (9th Cir. Dec. 19, 2022). The shorthand for this statutory ground for vacatur under the FAA is "manifest disregard of law." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (citing *Kyocera Corp. v. Prudential-Bache T Servs.*, 341 F.3d 987, 997 (9th Cir. 2003). An arbitrator's award is in manifest disregard of the law where it is clear from the record that the arbitrator recognized the applicable law and then ignored it. *Id.* (citing *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995); *see also HayDay Farms, Inc.*, 2022 WL 17748109, at *6 ("To demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." (quotations and citations omitted)). Furthermore, an "arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law." *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003).

It is a well-established legal principle that, where a contracting party's performance depends on the consent or approval of a third party or nonparty to the contract who is free to withhold his consent, specific performance will not be decreed if it does not appear that such consent or approval has been or can be obtained, or if it appears that such consent or approval is withheld or refused. *See* Cal. Civ. Code §3390(d) ("An agreement to procure the act or consent . . . of any third party" cannot be "specifically enforced."); *Casady v. Modern Metal Spinning Mfg. Co.*, 188 Cal.

6

App. 2d 728, 731 (1961) (*quoting* 81 C.J.S. Specific Performance, §16b) (*citing* Williston on Contracts (rev. ed.) § 1422) ("Where the defendant's performance depends on the consent or approval of one not a party to the contract who is free to withhold his consent, specific performance of the contract will not be decreed where it does not appear that such consent or approval has been or can be obtained, or where it appears that such consent or approval is withheld or refused . . . ."); *see also Ellis v. Treat*, 236 F. 120, 124 (9th Cir. 1916); *Axelrod v. Osage Oil & Refining Co.*, 29 F.2d 712, 732 (8th Cir. 1928) (dissent) (*citing* Pomeroy's Equity Jurisprudence, vol. 5 (2d Ed.) § 2178, p. 489) ("specific performance *will not be decreed* when performance depends on the consent of a third person who is at liberty to withhold his consent") (emphasis added.)

It is undisputed that the only parties to the MOA were Hyatt and the Union, and that Relevant was not a party to the MOA. The Award demonstrates that the Arbitrator was aware of the prohibition against awarding specific performance when performance depends on the consent of a third-party, and then manifestly disregarded the law when he ordered that Hyatt obtain from Relevant a written assumption of the MOA. To the extent that the Arbitrator attempted to distinguish the above statutory and case law to find it inapplicable, his reasoning was "fundamentally flawed" and his failure to acknowledge undisputed facts – specifically, that Relevant was not a party to the MOA – also amounts to manifest disregard of the law. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1293 (9th Cir. 2009); *Coutee*, 336 F.3d at 1131. Indeed, to circumvent the well-established prohibition against mandating the specific performance of an agreement to procure the act of a third person, the arbitrator, without any analysis of the relevant contract principles and without the benefit of Relevant's position, deemed that Relevant was not a "third party" and instead was "bound" to the MOA. In effect, without affording Relevant any due process, the arbitrator erroneously adjudicated the rights of Relevant who was not a party to the arbitration.

Accordingly, the Court concludes that the Arbitrator acted in manifest disregard of the law. As such, vacatur is appropriate.

### B. The Award Is Impossible For Hyatt To Comply With

The Award orders Hyatt to obtain Relevant's written assumption of the MOA. Impossibility is assessed "when performance is required by the court rather than at the time the contract is made." *Lansmont Corp. v. SPX Corp.*, 2011 U.S. Dist. LEXIS 65611, *10 (N.D. Cal. June 20, 2011) (citing Stevens Group Fund IV v. Sobrato Dev. Co., 1 Cal. App. 4th 886, 894 (1991)). Relevant has refused and continues to refuse to execute a writing or otherwise assume the MOA. Because Hyatt does not have the authority to compel Relevant to assume or to agree to the MOA, the Court finds that it is impossible for Hyatt to comply with the Award and concludes that the Award should also be vacated on those grounds.

### C. The Arbitrator Exceeded His Authority By Defining Relevant's Rights And Obligations

An arbitrator exceeds his authority where he seeks to "arbitrate disputes between [a party to the arbitration] and a third party." *Elier Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994); *see also* 9 U.S.C. §10(a)(4). "[A] decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator when that issue has not been submitted to him is not within the province of the arbitrator himself but only of the court." *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2nd Cir. 1963), *cert. denied*, 373 U.S. 949 (1963); *see also Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Electric Co.*, 793 F.2d 214, 216 (8th Cir. 1986) (holding arbitrator's award was unenforceable against employer not party to a CBA, grievance proceedings, or the arbitration); *NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995) (holding arbitrator exceeded his powers by awarding punitive damages to nonparties); *Dist. Council 1707 v. Ass'n of Black Soc. Workers Day Care*, 2010 U.S. Dist. LEXIS 26650, at *6 (S.D.N.Y. Mar. 22, 2010)

(holding arbitration award could not be confirmed against a non-party to the arbitration in a case that involved an arbitration award under a collective bargaining agreement) (*citing Orion Shipping & Trading Co.*, 312 F.2d at 301); *Amedeo Hotels L.P. v. New York Hotel & Motel Trades Council*, 2011 U.S. Dist. LEXIS 55032, at *29 (S.D.N.Y. May 17, 2011) (vacating arbitration award against hotel manager that impacted hotel owner who was not a party to the industry wide collective bargaining agreement ("IWA") containing an arbitration agreement or "me too" agreement adopting the IWA).

The fact that the Arbitrator attempted to carefully craft the Award to appear to order only Hyatt's performance, and not Relevant's, does not change the Court's conclusion that the Arbitrator overstepped his authority. The Award still requires or mandates acts by Relevant, specifically, that Relevant must execute a "written assumption of the MOA" in order for Hyatt to be able to comply with the Award. Arbitrators cannot "disregard contract provisions to achieve a desired result." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1167 (9th Cir. 2019); *see also Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177, 177 (9th Cir. 1983) (holding that an arbitrator's conduct of "disregard[ing] a specific contract provision to correct what he perceived as an injustice" was improper.)

The Arbitrator's power arises solely from the arbitration provision in the MOA to which Relevant was clearly not a party. Furthermore, the MOA expressly limits the Arbitrator's authority: "The arbitrator shall have no authority to alter, amend, add to, subtract from or otherwise modify or change the terms and conditions of this Agreement or engage in interest arbitration." By ordering Relevant's assumption of the MOA, the Court concludes that the Arbitrator disregarded the relevant terms of the MOA, and therefore exceeded his authority making vacatur appropriate.

///

///

## IV. CONCLUSION

For the foregoing reasons, Hyatt's Amended Motion to Vacate Arbitration Award is **GRANTED**. The Award issued by Arbitrator JC Gonzalez on May 20, 2022 is hereby **VACATED**.

Dated: December 20, 2022

_____
Honorable John F. Walter
United States District Court